FILED IN OPEN COURT
NOV 1 9 2026
CHRISTOPHER EKMAN
CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 26-00171-KD** |
| | ) | |
| **TIERRA SHATALIA DOUGLAS,** | ) | |
| **aka "BADD TWIN"** | ) | |

## PLEA AGREEMENT

The defendant, **TIERRA SHATALIA DOUGLAS**, represented by counsel, and the United States of America have reached a Plea Agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1. The defendant understands the defendant's rights as follows:

   a. To be represented by an attorney;

   b. To plead not guilty;

   c. To have a trial by an impartial jury;

   d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in the defendant's defense; and

   e. To not be compelled to self-incriminate.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Count One of the Indictment, charging a violation of Title 18, United States Code, Section 1513(f) & (c), Conspiracy to Retaliate Against Witnesses.

3. The defendant understands that the statements the defendant makes under oath in the plea of guilty must be completely truthful and that the defendant can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements the defendant makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon the defendant's statements here and the defendant's responses to any questions that the defendant may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. The defendant is certain that the defendant is in full possession of the defendant's senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing that will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. The defendant has discussed the facts of the case with the defendant's attorney, and the defendant's attorney has explained to the defendant the essential legal elements of the criminal charges that have been brought against the defendant. The defendant's attorney has also explained to the defendant the attorney's understanding of the United States' evidence and the law as it relates to the facts of the defendant's offenses.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt. The defendant and the defendant's counsel have discussed possible defenses to the charges. The defendant believes that the defendant's attorney has represented the

defendant faithfully, skillfully, and diligently, and the defendant is completely satisfied with the legal advice of the defendant's attorney.

8. The defendant recognizes that pleading guilty may have consequences with respect to immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

9. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and the defendant's counsel are not part of this agreement and are not agreed to by the United States.

10. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. The defendant is pleading guilty because the defendant is guilty.

11. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

**PENALTY**

12. The defendant understands that the penalty the Court could impose as to Count One of the Indictment is:

a. A maximum sentence of life imprisonment;

b. A fine not to exceed $250,000;

c. A maximum term of supervised release of five (5) years, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for the entire term of supervised release;

d. A mandatory special assessment of $100.00;

e. Such restitution as may be ordered by the Court; and

f. Such forfeiture of property as may be ordered by the Court.

**SENTENCING**

13. The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with the defendant's attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on

the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant represents that no one has promised or assured the defendant of a particular sentence, and the defendant understands and agrees that the defendant cannot treat any estimate of a sentence as binding in any respect. The defendant understands that the defendant will not be allowed to withdraw the defendant's guilty plea if the advisory guideline range is higher than expected, if the Court departs or varies from the advisory guideline range, or if the sentence otherwise differs from the defendant's expectations.

14. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16. Both the defendant and the United States are free to allocute fully at the time of sentencing.

17. The defendant agrees to tender $100.00 per count of conviction to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations to

which it may agree within this document if the defendant fails to pay the special assessment prior to or at the time of the defendant's sentencing.

18. The United States, in its sole discretion, may oppose any adjustment for acceptance of responsibility if the defendant: (1) fails to admit each and every item in the Factual Resume; (2) denies involvement in the offenses; (3) gives conflicting statements about the defendant's involvement in the offenses; (4) is untruthful with the Court, the United States, law enforcement, or the United States Probation Office; (5) obstructs or attempts to obstruct justice prior to sentencing; (6) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (7) attempts to withdraw the defendant's plea of guilty for any reason other than those expressly enumerated in the "Limited Waiver of Right to Appeal and Waiver of Collateral Attack" section of this Plea Agreement.

**RESTITUTION**

19. Pursuant to 18 U.S.C. §§ 3556 and 3663A, restitution is mandatory in some cases. The defendant agrees to make full restitution in an amount to be determined by the Court at sentencing and as to all relevant conduct regardless of whether it relates to the count of conviction.

**FORFEITURE**

20. The defendant agrees to forfeit to the United States, via an administrative or judicial proceeding, all assets listed in the charging document/bill of particulars, as well as all assets seized during this investigation or a related investigation. The defendant consents to the filing of a motion for a preliminary order forfeiting such assets and any dollar amount specified in the charging document/bill of particulars. The

defendant also consents to the filing of a motion for substitute assets up to the amount of proceeds obtained from the commission of the offense of conviction. The defendant admits there is a sufficient factual nexus between the assets subject to forfeiture and the offense of conviction. The defendant hereby withdraws any petition for remission or claim for these assets and waives any right to contest, appeal, or collaterally attack the government's forfeiture proceedings on any ground including that the forfeiture constitutes an unconstitutionally excessive fine or punishment. The defendant consents to the United States entering the final order of forfeiture into the Treasury Offset Program. Finally, the defendant agrees to the abandonment of the defendant's interest, if any, in any assets seized during this investigation or a related investigation that are not forfeited to the United States.

**FORFEITURE IN A VICTIM CASE**

21. The United States Attorney's Office for the Southern District of Alabama will recommend to the Attorney General that any net proceeds derived from the sale of any judicially forfeited assets be remitted or restored to eligible victims of the offense for which the defendant pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the United States determines, in its sole discretion, that the legal requirements for such recommendation are met. However, the defendant understands that the United States Attorney's Office only has authority to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

## FINANCIAL OBLIGATIONS

22. The defendant expressly authorizes the United States Attorney's Office for the Southern District of Alabama to obtain a credit report to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. To facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party or entity, and whether held in this country or outside this country. Accordingly:

a. Upon request, the defendant will submit a completed Financial Statement to the United States Attorney's Office, in a form it provides and as it directs. The defendant promises that the financial statements and any disclosures the defendant makes on it will be complete, accurate, and truthful. The defendant further agrees to provide waivers, consents, or releases requested by the United States Attorney's Office to access records to verify the defendant's disclosures, such releases to be valid for a period extending 90 days from the date of sentencing. The defendant also authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the United States Probation Office.

b. The defendant will provide a waiver of the defendant's privacy protections to expressly authorize the United States Attorney's Office to access the defendant's credit report and tax information held by the Internal Revenue

Service to evaluate the defendant's ability to satisfy any monetary penalty imposed by the Court.

c. The defendant agrees not to transfer, assign, dispose, remove, conceal, pledge as collateral, waste, or destroy property to defraud the United States and any victims, or to hinder, delay, or prevent the satisfaction of any monetary penalty imposed by the Court.

## UNITED STATES' OBLIGATIONS

23. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

24. The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court. The United States fully reserves its right to argue and present evidence on the appropriate guideline range and the applicability of any guideline enhancements.

## APPLICATION OF U.S.S.G. § 5K1.1, FED. R. CRIM. P. 35, AND/OR 18 U.S.C. § 3553(e)

25. The defendant understands and agrees that the defendant has no right to cooperate, and that the decision whether to allow the defendant to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to

allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

a. The defendant shall fully, completely, and truthfully respond to all questions put to the defendant by law enforcement authorities regarding the underlying facts of the offenses with which the defendant is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which the defendant has information or knowledge.

b. The defendant acknowledges and understands that the defendant shall provide truthful and complete information regarding any offense(s) about which the defendant has knowledge or information regardless of whether law enforcement authorities question the defendant specifically about any such offense(s). This provision requires the defendant to divulge all information available to the defendant even when law enforcement authorities do not know about the defendant's involvement, knowledge, or information relating to any particular offense. This requirement extends to any and all persons about whom the defendant has such knowledge or information.

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which the defendant's cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to comply fully with all instructions from law enforcement authorities regarding the specific assistance the defendant shall provide. This includes, but is not limited to, wearing/carrying an undercover recording device,

consenting to monitored and/or recorded telephone conversations, providing law enforcement with the password(s) to the defendant's cell phones, social media accounts, and any other electronic devices or accounts, participating in undercover operations, and testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and at any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s), which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination(s) may be used by the United States in its evaluation of whether there has been substantial assistance and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

e. The defendant agrees to turn over to the United States any and all documents, records, files, and other tangible objects that are in the defendant's possession or under the defendant's control and that are relevant to the defendant's participation in and knowledge of criminal activities, regardless of whether the materials relate to the charged offenses. This obligation is a continuing one and includes materials that the defendant may acquire, obtain, or have access to after the execution of this agreement.

f. The defendant also agrees to identify the assets of any other person that were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g. If the defendant provides full, complete, truthful, and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another person who has committed an offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States, in its sole discretion, deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. To the extent a minimum mandatory sentence is applicable, the United States reserves its right to make any departure request pursuant to Section 5K1.1 of the United States Sentencing Guidelines, Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3553(e), or any combination of these provisions, in its sole discretion. The defendant understands that any motion under 18 U.S.C. § 3553(e), if deemed appropriate by the United States in its sole discretion, will only be made by the United States in conjunction with a departure request pursuant to Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, and will not be made independently of Section 5K1.1 or Rule 35. The defendant understands that the United States will make no representation or promise regarding the exact

amount of reduction, if any, the United States might make in the event that it determines that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. The defendant understands that a mere interview or interviews with law enforcement authorities does not constitute substantial assistance and will not, standing alone, be the basis for a motion for sentence reduction. The defendant understands that merely entering a plea of guilty does not constitute substantial assistance and will not, standing alone, be the basis for a motion for sentence reduction. The defendant also understands that, should the defendant provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commit a new criminal offense, the United States will not make a motion for sentence reduction. If the defendant's effort to cooperate with the United States does not amount to substantial assistance in the investigation or prosecution of another person who has committed an offense, as determined solely by the United States, then the United States agrees to recommend that the defendant receive any sentence that the United States otherwise has recommended the defendant to receive under this Plea Agreement.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, whether charged or uncharged, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by the defendant from the defendant's

illegal activities or obtained by others associated with the defendant or of which the defendant has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

(1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Indictment; and

(2) permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during the defendant's breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, the Speedy Trial Act, or any statute or case law by which the defendant seeks to suppress the use of such information, or any evidence derived from such information.

i. Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during the defendant's cooperation. The defendant acknowledges and agrees that the

information that the defendant discloses to the United States pursuant to this agreement may be used against the defendant in any such prosecution.

j. The United States and the defendant agree that the defendant will continue cooperation pursuant to this agreement even after the defendant is sentenced in the instant matter. The defendant's failure to continue cooperation pursuant to this agreement will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate and prosecute any charge in the Indictment that is to be dismissed in accordance with this agreement. Under these circumstances, the defendant expressly waives any rights the defendant may have under any applicable statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

26. As part of the bargained-for exchange represented in this Plea Agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge the defendant's guilty plea, conviction, or sentence in any district court or appellate court proceedings.

**EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

(1) any sentence imposed in excess of the statutory maximum;

(2) any sentence that constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

27. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

28. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines that would affect the sentence.

29. If the defendant receives a sentence within or below the advisory guideline range, this Plea Agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

**VIOLATION OF AGREEMENT**

30. The defendant understands that if the United States determines the defendant has breached any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement will remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that the defendant might have under the Sixth Amendment and/or the Speedy Trial Act.

31. In addition, if the defendant is released from detention prior to sentencing, the defendant understands that the United States will no longer be bound by this agreement if the defendant violates any condition of the defendant's release prior to sentencing or prior to serving the defendant's sentence after it is imposed. If the defendant is in custody and engages in criminal conduct between the date of this Plea Agreement and the date of sentencing, the United States, in its discretion, may consider that new criminal conduct as a breach of this Plea Agreement.

**ENTIRETY OF AGREEMENT**

32. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties. The defendant understands and agrees that neither the defendant nor the United States have any obligation or understanding other than those set forth specifically in this written agreement.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: November 9, 2026

Justin D. Roller
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: November 10, 2026

Justin D. Kopf
Assistant United States Attorney
Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 11-19-26

Tierra Shatalia Douglas
Defendant

I am the attorney for the defendant. I have fully explained the defendant's rights to the defendant with respect to the offenses charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with the defendant. To my knowledge, the defendant's decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, the defendant's decision to stipulate to the facts is an informed, intelligent, and voluntary one.

Date: 11·19·26

Jan Jones
Attorney for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 26-00171-KD** |
| | ) | |
| **TIERRA SHATALIA DOUGLAS,** | ) | |
| **aka "BADD TWIN"** | ) | |

**FACTUAL RESUME**

The defendant, **TIERRA SHATALIA DOUGLAS** (**"DOUGLAS"**), admits the allegations of Count One of the Indictment.

**ELEMENTS OF THE OFFENSE**

**DOUGLAS** understands that to prove a violation of Title 18, United States Code, Section 1513(f) & (c), as charged in Count One of the Indictment, the United States must prove:

First: the defendant agreed with others to try to accomplish a shared and unlawful plan to violate 18 U.S.C. § 1513(e);[1]

Second: the defendant knew the unlawful purpose of the plan and willfully joined in it; and

Third: the defendant's retaliation occurred because of attendance at and testimony in a criminal case.

**OFFENSE CONDUCT**

**DOUGLAS** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the

[1] The elements of a violation of 18 U.S.C. § 1513(e) are as follows: (1) the defendant knowingly took an action with intent to retaliate; (2) the defendant's action harmed a person (emotionally, economically, or otherwise); and (3) the defendant's retaliation was motivated by the person's cooperation with law enforcement. *United States* v. *Colombe* 964 F.3d 755, 758 (8th Cir. 2020); *United States* v. *Camick*, 796 F.3d 1206, 1220 (10th Cir. 2015); *United States* v. *Stoker*, 706 F.3d 643, 646, 648 (5th Cir. 2013).

Court in determining whether a factual basis exists for **DOUGLAS's** plea of guilty. The statement of facts does not contain each and every fact known to **DOUGLAS** and to the United States concerning the defendant's involvement in the charges set forth in the Plea Agreement. All dates, times, amounts, and locations referenced below are approximations.

**Overview**

In January 2026, **DOUGLAS** used "Meta Glasses" to surreptitiously film cooperating defendant-witnesses in the federal trial of Glennie Antonio McGee ("McGee"), Echandza Dianca Maxie ("Echandza"), and Exavieria Deagnes Maxie ("Exavieria") in *United States* v. *McGee, et al.*, Case No. 24-cr-112-TFM (S.D. Ala.) (the "*McGee Trial*"). **DOUGLAS**'s surreptitious filming violated a standing order of the Court prohibiting filming of court proceedings. **DOUGLAS** disseminated the videos to publicly identify and intimidate the witnesses, which included H.W., J.H., and T.H., as referenced in the Indictment. **DOUGLAS** also communicated with conspirators to obtain identifying information about the witnesses, as reflected in text messages and data seized from her cell phone. **DOUGLAS**'s intimidation, harassment of, and retaliation against witnesses continued through August 2026, after McGee and Echandza were sentenced to life in prison for their crimes. Specifically, in August 2026, **DOUGLAS** sent multiple harassing messages to T.H., used ChatGPT to generate and disseminate a flyer identifying T.H. as a "snitch," and publicly released information about T.H.'s children and where they went to school.

**The United States District Court for the Southern District of Alabama's Standing Order prohibits videotaping of court proceedings.**

Pursuant to Southern District of Alabama Standing Order No. 31, (1) "[m]embers of the general public shall NOT bring any electronic devices into the courthouse without prior approval of a judge or the clerk of this court"; (2) "[a]ll such items must first be screened by the

United States Marshal Service or a Court Security Officer"; (3) "[t]he taking of photographs and the operation of audio or video recording equipment in the courtroom or its environs, . . . whether or not court is in session, is prohibited"; and (4) "[a]ny individual violating this Order is subject to contempt, and the electronic device is subject to confiscation by the Court." U.S. Dist. Ct., S.D. Ala., Standing Order No. 31, In Re: Electronic Devices in Courthouse (Jan. 3, 2006), available at https://www.alsd.uscourts.gov/sites/alsd/files/STDO31.pdf.

**The *McGee Trial.***

On January 5, 2026, a federal criminal jury trial of McGee, Echandza, and Exavieria commenced before U.S. District Judge Terry F. Moorer of the Southern District of Alabama at the United States Courthouse located at 155 St. Joseph St., Mobile, Alabama 36602. The trial involved allegations of a continuing criminal enterprise, narcotics offenses, firearms offenses, and evidence tampering. During the trial, several cooperating defendant-witnesses testified pursuant to plea and proffer agreements. Those witnesses included H.W., J.H., T.H., and others who testified during the second week of trial. The *McGee Trial* proceeded for three weeks, culminating in guilty verdicts returned on January 21, 2026.

**H.W. notifies law enforcement of a surreptitiously filmed video of H.W. corresponding to H.W.'s testimony at the *McGee Trial.***

On January 16, 2026, H.W. contacted agents and advised them that on January 14, 2026, H.W. noticed two African-American females sitting on a bench outside of Judge Moorer's courtroom (3B) when H.W. exited the courtroom for the purpose of taking a break before H.W. was needed to return to provide testimony in the *McGee Trial* later that same day (January 14, 2026). H.W. advised that on January 16, 2026, in the early morning hours, H.W. received a video via MMS text from a friend ("Individual-1"). The video depicted H.W. exiting courtroom 3B and

walking toward the elevator on January 14, 2026, the same day H.W. testified in the *McGee Trial.* H.W. stated that Individual-1 had observed the video and the message surrounding the video was (not verbatim), "This guy is telling, do anyone know him, he needs to be hurt." Agents interviewed Individual-1, who confirmed H.W.'s statements. The public dissemination of the video frightened and caused emotion harm to H.W.

The United States Marshal Service ("USMS") conducted a search of the Southern District of Alabama courthouse's surveillance system for videos on January 14, 2026, around the timeframe when H.W. exited courtroom 3B. USMS's search revealed a series of videos from several different angles. One video clip specifically showed two African-American females sitting on the bench outside of courtroom 3B. As depicted in the video, one of the females reached up to her glasses and then her head motion tracked H.W.'s movements as H.W. walked toward the elevator.

Agents identified **DOUGLAS** as the female who appeared to activate her glasses as depicted on video outside of courtroom 3B. An additional video from the courthouse surveillance system revealed that on January 14, 2026, at 1:02 pm, the same females entered the courthouse with McGee's son ("Individual-2"). The video showed the females approach a Court Security Officer. A short time later, they exited the courthouse with cell phones in their hands and Individual-2 continued through security and entered the courthouse. As noted above, since 2006, cell phones and other recording devices, including but not limited to Meta Glasses, have been prohibited items pursuant to the Court's Standing Order No. 31.

Moments later, **DOUGLAS** and a second female returned to the Court Security Officer for inspection to enter the courthouse, this time without their cell phones. **DOUGLAS** placed a driver's license and a pair of glasses in the scan box. **DOUGLAS** then walked through the

magnetometer with her hands raised, revealing large tattoos on her left forearm and her upper chest area, which agents used to confirm **DOUGLAS's** identity.

**DOUGLAS's social media accounts link her to the defendants in the *McGee Trial.***

On January 23, 2026, agents identified a Facebook profile for **DOUGLAS** named "Badd Twin" (the "Facebook Account"). Agents also recovered a video from the Facebook Account of **DOUGLAS** wearing what appeared to be Meta Glasses while driving. Meta Glasses are eyewear that contain integrated technology allowing their users to capture photos/videos via a point-of-view camera, among other functions. A search of the public-facing page for the Facebook Account profile revealed that **DOUGLAS** has multiple tattoos, including a sleeve-style tattoo on her left arm and several tattoos on her upper chest area, as depicted on the courthouse surveillance video from January 14, 2026, as described above.

In February 2026, agents executed a federal search warrant for the contents of the Facebook account, which confirmed that it was **DOUGLAS's** account. The account included "selfie"-style photos and videos of **DOUGLAS**, as well as one-to-one chat messages identifying **DOUGLAS** by name. The Facebook Account data also showed that **DOUGLAS** accessed Facebook using an iPhone 17 at 10:41 pm CST on January 14, 2026—the same evening after she surreptitiously filmed H.W. outside Judge Moorer's courtroom.

Additionally, the Facebook Account data showed **DOUGLAS's** connection and loyalty to defendants in the *McGee Trial*—namely, Echandza. Specifically, on January 22, 2026, **DOUGLAS** posted a Fox 10 news article reporting on the jury's guilty verdicts in the *McGee Trial*, with a comment, "Free @Echandza Maxie Mcgee 🖤." A Facebook user responded to the post, "I pray they go light for the sake of their kids. I hate this happened smh," to which **DOUGLAS** replied, "I miss my girl."

In March 2026, agents executed a federal search warrant for the contents of **DOUGLAS's** Instagram account named "_thebaddtwinn" (the "Instagram Account"). In the Instagram Account, agents located data showing that **DOUGLAS** had "followed" Echandza's Instagram account, "selfmadechic82," since October 2015.

**Aug. 2026: DOUGLAS makes several public posts retaliating against T.H. after McGee and Echandza receive life sentences.**

On August 6, 2026, and August 7, 2026, Judge Moorer sentenced McGee and Echandza each to serve life in prison, among other penalties. Later that same day, **DOUGLAS** used the Facebook Account to make a post intimidating and retaliating against T.H., who testified during the *McGee Trial* in January 2026, as noted above. In **DOUGLAS's** Facebook post, which tagged T.H., **DOUGLAS** wrote, "[T.H.] I mean how much information did you tell them to get Chan a life sentence & Glennie 4 life sentences we know yo slow special ed diploma having ass can't comprehend well enough to understand anything.." **DOUGLAS** added a comment to the post, stating, "I don't like yo fat Rondarius the bull looking ass."

In August 2026, **DOUGLAS** also disseminated a flyer containing T.H.'s picture and identifying T.H. as "A SNITCH," and sent Discord messages identifying one of T.H.'s minor children and where the child went to school. The above-referenced retaliatory messages and posts frightened and caused emotional harm to T.H.

**Aug. 2026: agents arrest DOUGLAS, obtain admissions from her, and seize and search her cell phone.**

On August 19, 2026, agents executed a warrant to search **DOUGLAS's** person, her apartment, and her car to locate and seize her cell phone and Meta Glasses. Agents conducted a traffic stop of **DOUGLAS's** vehicle. **DOUGLAS** had marijuana on her person and was arrested for a state felony first-degree marijuana possession charge. Agents seized **DOUGLAS's** cell phone

and searched it. **DOUGLAS** did not have the Meta Glasses and indicated that she broke them and no longer had them.

During a recorded post-*Miranda* interview, **DOUGLAS** admitted to going to the *McGee Trial* and using Meta Glasses to surreptitiously film witnesses in the case. She also admitted to publicly disseminating the videos to coconspirators, though she would not say to whom or identify who else was involved with her doing so.

**DOUGLAS's phone data confirms her efforts to retaliate against witnesses in the *McGee Trial* and her communications with others to further the conspiracy.**

Agents extracted the contents of **DOUGLAS's** cell phone, which contained evidence of her efforts to intimidate and retaliate against witnesses in the *McGee Trial* and her communications with others to further the conspiracy to which she is pleading guilty.

For example, the phone contained several saved images of the video of H.W. that **DOUGLAS** surreptitiously filmed outside courtroom 3B on January 14, 2026. The phone also contained several images and videos that **DOUGLAS** filmed inside Judge Moorer's courtroom during the *McGee Trial*. Some of the videos included audio of testimony by J.H. and related wiretap calls, and depicted **DOUGLAS** sitting next to McGee's son, Individual-2, in the gallery of courtroom 3B.

On the day of the surreptitious filming, January 14, 2026, **DOUGLAS** texted a coconspirator, "Need you to run a name." The coconspirator responded, "$59.95." **DOUGLAS** responded, "Lmfaooooo chill," and "I just left glennie trial." The coconspirator responded, "Who," and **DOUGLAS** replied, "[J.H.]," who **DOUGLAS** had filmed testifying earlier that same day. The coconspirator responded, "I gotcha in a lil bit… Can't use the internet yet Verizon decoyin everybody.. Ima do it when I get to WiFi."

Later that same day, at 8:02 pm on January 14, 2026, the coconspirator texted **DOUGLAS**, "Finna look homes up." At 8:07 pm, the coconspirator texted **DOUGLAS** "12," a slang term for police, and attached a copy of J.H.'s plea agreement in the *McGee* case. **DOUGLAS** replied, "Of course lol he took the stand today I'm looking for a charge he caught." The coconspirator sent **DOUGLAS** their PACER login credentials.

The next day, January 15, 2026, **DOUGLAS** and the coconspirator exchanged additional text messages about **DOUGLAS** being back at the courthouse for the *McGee Trial*. At 12:41 pm, **DOUGLAS** wrote, "They on break til 1."

At 5:29 pm on January 21, 2026, **DOUGLAS** texted an individual about the jury returning guilty verdicts in the *McGee Trial*. **DOUGLAS** stated, "Omgggggg, They finna get a life sentence smh," and "I'm sick."

On February 9, 2026, **DOUGLAS** began a text-message exchange with T.H., who **DOUGLAS** saved in her phone under the contact name "The Rat." In the messages, **DOUGLAS** admitted to attending the *McGee Trial* to observe cooperating witnesses, and sent numerous audio messages to T.H. taunting T.H. for testifying in the case and for being merely a "runner" for McGee whereas Echandza was the "queen" for whom McGee provided a lavish lifestyle.

At 3:25 pm on August 7, 2026, **DOUGLAS** texted an individual, "They just gave glennie 4 life sentences & then some." The individual responded, "Dammnnnnnnn." Earlier that same day, at 1:18 pm on August 7, 2026, **DOUGLAS** asked ChatGPT to "Make a confidential informant flyer saying [T.H.] a snitch." ChatGPT responded, "I can't create a flyer accusing a real person, such as '[T.H.],' of being a snitch or a confidential informant. I can help make it **clearly fictional/parody**, for example with a made-up name and an obvious disclaimer like **FICTIONAL CHARACTER – PARODY ONLY**." This is precisely the wording used on the

flyer with T.H.'s picture and the title "A SNITCH" referenced above, which **DOUGLAS** publicly disseminated after McGee and Echandza were sentenced in August 2026.

Finally, **DOUGLAS's** phone confirmed that the Discord account that posted the identity and schools of T.H.'s children belonged to **DOUGLAS**.

As part of her guilty plea in this case, **DOUGLAS** admits that (1) she agreed with other people to try to accomplish a shared and unlawful plan to commit witness retaliation in violation of 18 U.S.C. § 1513(e); (2) she knew the unlawful purpose of the plan and willfully joined in it; and (3) her retaliation occurred because of witnesses' attendance at and testimony in a criminal case, *i.e.*, the *McGee Trial*.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: November 9, 2026

Justin D. Roller
Assistant United States Attorney
Deputy Chief, Criminal Division

Date: November 10, 2026

Justin D. Kopf
Assistant United States Attorney
Chief, Criminal Division

Date: 11-18-26

Tierra Shatalia Douglas
Defendant

Date: 11.19.26

Jan Jones
Attorney for Defendant